# EXHIBIT A

Jayni Foley Hein (Bar No. 258261)
Sejal Choksi-Chugh (Bar No. 222093)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: jayni@baykeeper.org
Email: sejal@baykeeper.org


Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation, | Case No: C 13-02425 HRL |
| Plaintiff, | **[PROPOSED] STIPULATION AND SETTLEMENT AGREEMENT** |
| v. | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 _et seq._)** |
| CITY OF SUNNYVALE; BAY COUNTIES WASTE SERVICES, INC.; and STEVENS CREEK QUARRY, INC., | |
| Defendants. | |

### STIPULATION AND SETTLEMENT AGREEMENT

The following Stipulation and Settlement Agreement ("Settlement Agreement") is entered into by and between Plaintiff San Francisco Baykeeper ("Plaintiff" or "Baykeeper"), and Defendant City of Sunnyvale ("Sunnyvale") on behalf of the Defendants. The signatory entities entering into this Settlement Agreement are each referred to herein as a "Settling Party" and collectively as "Parties."

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Sunnyvale is a municipal corporation that provides, among other things, utility services to the residents of Sunnyvale. Sunnyvale owns and/or operates a Materials Recovery Facility and a Concrete Recycling Plant both located at 1444 Borregas Avenue in Sunnyvale, California (the "Facility"), which collects and processes residential and commercial trash, electronic waste, yard trimmings, curbside recyclables, food waste, and construction and demolition debris. The Materials Recovery Facility, also referred to as the SMaRT Station, is currently operated by Bay County Waste Services, Inc., and the Concrete Recycling Plant is currently operated by Stevens Creek Quarry, Inc.;

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), and any future iterations of this permit which are adopted by the State Water Resources Control Board ("State Board"), issued pursuant to Section 402(p) of the Federal Water Pollution Control Act, 33 U.S.C. §1342(p) (hereinafter "Industrial Stormwater Permit"). These industrial activities include, *inter alia*, the collection and processing of recyclables, concrete, asphalt, and waste materials, transportation of materials on and off site, storage of recyclables, construction and demolition debris, and waste materials, truck and equipment operation, and other industrial activities related to the operation of a Materials Recovery Facility and a Concrete Recycling Plant;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Sunnyvale: 1) develop and implement a Storm Water Pollution Prevention Plan ("SWPPP"), 2) control pollutant discharges using Best Available Technology economically achievable ("BAT") and Best Conventional pollutant control Technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and, 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards in receiving waters;

WHEREAS, on March 22, 2013, Baykeeper served Sunnyvale, the Administrator of EPA Region IX, the Executive Director of the State Board, the Executive Officer of the Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Administrator of the EPA with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, Baykeeper filed a complaint ("Complaint") against Sunnyvale, Bay Counties Waste Services, Inc., and Stevens Creek Quarry, Inc. ("Defendants") in the United States District Court, Northern District Court of California on May 29, 2013, entitled *Baykeeper v. City of Sunnyvale, Bay Counties Waste Services, Inc., and Stevens Creek Quarry, Inc.* (Case No. C 13-02425);

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of Baykeeper's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and to avoid the costs and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED AND AGREED BETWEEN THE SETTLING PARTIES:

# I. COMMITMENTS OF SUNNYVALE[1]

## A. General SWPPP and BMP Requirements

1. In order to further reduce or prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Sunnyvale shall implement the structural and/or non-structural BMPs described more fully below.

2. **Site Map**: Within thirty (30) calendar days of the Effective Date, Sunnyvale shall update the Site Map included in the Facility SWPPP. The Site Map shall clearly denote the

---

[1] It is understood and agreed by the Parties that Sunnyvale may choose to hire contractors acting on the City's behalf to undertake the City's obligations under this Settlement Agreement.

topography and the direction of stormwater flow for each distinct area of the Facility. The Site Map shall also identify property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the general types of materials of which the berms are composed, any permanent structures and features, discharge points, and all other physical structures or items regulated under the Industrial Stormwater Permit and in this Settlement Agreement.

3. **SWPPP Revisions, Designation and Protocol for All Sampling Locations**: Within thirty (30) calendar days of the Effective Date, Sunnyvale shall update the Facility SWPPP to fully describe any modifications to the discharge or sampling locations, as shown on the Site Map and described in the SWPPP ("Initial Designated Discharge Points") and to incorporate the applicable requirements and BMPs set forth in the following paragraphs of this Settlement Agreement and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days, consistent with the SWPPP submission requirements set forth in Paragraph 19, below.

4. **Best Management Practices**: Sunnyvale shall develop and implement BMPs designed to comply with Effluent Limitation B(3) and Receiving Water Limitation C(2) of the Industrial Stormwater Permit, including the BMPs set forth in Paragraphs 5 through 10 of this Settlement Agreement.

5. **Storm Drain Inlet/Catch Basin Best Management Practices**:

a. <u>Pre-Season Storm Drain Inlet/Designated Discharge Point Inspections</u>: Between September 1 and October 1 of each year, Sunnyvale shall inspect any storm drain inlets, catch basins, Initial or Final Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility. Sunnyvale shall promptly clean, as needed, each drain inlet, catch basin, Initial or Final Designated Discharge Point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

b. <u>Storm Drain Inlet/Designated Discharge Point Maintenance and Cleaning</u>: Weekly during the Wet Season (*i.e*., from October 1 to May 30 of each year that this Settlement Agreement is in effect) ("Wet Season"), Sunnyvale shall inspect all storm drain inlets, catch basins, Initial or Final Designated Discharge Points, filtration/treatment devices, and other BMPs

in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  Sunnyvale shall properly dispose of any dust, sediment, debris, or other removed pollutants.

        c.     <u>Log of Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning</u>:  Sunnyvale shall prepare and maintain a log of the Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance, and Cleaning described herein ("Maintenance Log"), which shall indicate the staff who completed the maintenance activity and when the activity was completed.  The Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

        6.     **Site Sweeping**:  Beginning on the Effective Date, on each day that Sunnyvale is actively operating during the Wet Season and the Dry Season, except for days when it is raining, Sunnyvale shall mechanically sweep the accessible paved areas of the SMaRT Station at least once per day.  On each day that Sunnyvale is actively operating, Sunnyvale shall also mechanically sweep the accessible paved areas and sweep additional uncovered accessible areas by hand, vacuum, or vacuum-assisted power washing at least two (2) times per day in the period 24 hours prior to a forecasted rain event.[2]  Sunnyvale shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log.  The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates and times the sweeping activities occurred.  The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

        7.     **Abandoned or Inutile Equipment Storage and Removal**:  Beginning on the Effective Date, Sunnyvale shall begin to either store under cover, or remove from the Facility, all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

---

[2] For purposes of this Agreement, the term "forecasted rain event" shall mean whenever there is, according to the National Weather Service, a 50% or greater chance of precipitation exceeding 0.1 inches at the Facility.

8. **Vehicle and Equipment Management**:  Beginning on the Effective Date, Sunnyvale shall continue to implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges.  Such BMPs shall include relocating the vehicles offsite to better facilitate sweeping of paved areas, placing drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

9. **Vehicle and Equipment Maintenance**:  Beginning on the Effective Date, Sunnyvale shall not, during rainfall events, conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repairs at the Concrete Recycling Plant in outdoor uncovered areas from which stormwater may discharge.  In addition, Sunnyvale shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repairs at the SMaRT Station in outdoor uncovered areas from which stormwater may discharge.  If emergency circumstances demand that Sunnyvale conduct such maintenance or repair activities in non-covered areas from which stormwater may discharge from the Facility, Sunnyvale shall inspect the area where the maintenance or repairs occurred and clean up waste products, including pollutant-containing fluids deposited or spilled on the ground as a result of the maintenance or repair.

B. **First Year Interim Requirements and Supplemental Monitoring**

10. **Additional Interim BMPs at the Facility**:  Sunnyvale shall implement the following BMPs at the Facility and include them in the updated SWPPP required under Paragraph 3. If any modifications below result in changes to discharge locations at the Facility, those discharge points must be updated on the Facility Site Map in accordance with Paragraph 19 and samples must be taken in accordance with Paragraphs 20-22.

//

//

a.   **SMaRT Station:**

  i.   **Interim BMPs:** Within thirty (30) calendar days from the Effective Date, Sunnyvale shall plan, design, and include in the SWPPP the interim BMPs that will be implemented to reduce pollution runoff from the SMaRT Station.  The interim BMPs should be implemented no later than forty-five (45) calendar days after the Effective Date, and notification shall be provided to Baykeeper in writing upon implementation.  The interim BMPs shall be integrated into the revisions of Sunnyvale's SWPPP made pursuant to Paragraph 3 and shall include at least the following:

    a)   Implement a program to tarp or otherwise cover exposed waste material within twelve (12) hours prior to all forecasted rain events.  For the purposes of this BMP, waste materials include exposed municipal solid waste, electronic waste, and construction debris.  In addition, prior to forecasted rain events, Sunnyvale will install linear sediment control BMPs (i.e. fiber rolls, rock filters, sand and gravel bag barriers, or gravel filter berms) around the concrete storage area, and, if feasible,[3] will tarp or otherwise cover the concrete pile when it is actively raining.  This program shall require designated staff to monitor weather forecasts, train other personnel, and ensure minimal exposure of waste materials to rainfall through tarping or other coverage;

    b)   Within 24-hours of a forecasted rain event, Sunnyvale will install two weighted wattles or sand and gravel bag barriers

---

[3] Examples of when tarping of the concrete storage area may not be feasible include during severe wind events or if rain begins during non-business hours and was not forecasted.

around storm drain inlets to slow the flow of runoff to existing storm drains; and

    c) Increase the frequency of sweeping and other housekeeping measures as needed, based on visual inspections of the paved areas of the facility prior to forecasted rain events.

  ii. **New Monitoring Locations:** For the initial wet season monitoring, the following discharge points, identified in Exhibit 1, shall be Initial Designated Discharge Points for the SMaRT Station: SM-1, SM-2, and SM-3.

b. **Concrete Recycling Plant:**

  i. **New Monitoring Locations:** For the initial wet season monitoring, the following discharge points, identified in Exhibit 2, shall be Initial Designated Discharge Points for the Concrete Recycling Plant: DP-5, DP-7 and DP-8.

c. **Characterization Monitoring**

  i. During the 2013-2014 Wet Season (October 1 through May 31), for the initial wet season monitoring, Sunnyvale shall collect and analyze samples from the Initial Designated Discharge Points for the SMaRT Station and Concrete Recycling Plant, set forth in B.10.a.ii. and b.i., during the first four (4) qualifying storm events, as defined in the Industrial Stormwater Permit, from each of the Initial Designated Discharge Points at the SMaRT Station and Concrete Recycling Plant where a discharge is occurring. However, a storm may still be considered qualifying for the purposes of this Agreement for stormwater discharges collected after the first hour of discharge during scheduled operating hours

and during any storm event that is preceded by a 24-hour dry period.

    ii.     Each stormwater sample must be analyzed for the presence of at least each of the parameters listed on the chart attached hereto as Exhibit 3. If Sunnyvale is unable to take a sample from any of the Initial Designated Discharge Points during any of the first four storm events of the Wet Season, Sunnyvale shall continue to collect samples from any subsequent storm events until four samples have been collected from each Initial Designated Discharge Point in that Wet Season. However, if there is no flow from an Initial Designated Discharge Point during any storm event by the time that four (4) samples have been collected from the other Designated Discharge Points, Sunnyvale may discontinue attempting to collect a sample from that specific discharge point.

    11.     In the event that Sunnyvale is unable to collect four samples from each Initial Designated Discharge Point in a Wet Season, Sunnyvale shall explain in writing why it was unable to collect the required sample(s). If three (3) consecutive samples from an Initial Designated Discharge Point have constituent concentrations below the Target Levels set forth in Exhibit 3 for any parameter(s), Sunnyvale need not conduct additional analyses for any non-exceeding parameter(s) during that Wet Season from that Initial Designated Discharge Point. In the second wet season, only two confirming samples need to be collected for any parameter that was not exceeded during the prior wet season. In each future wet season covered by this agreement, only one sample for a previously non-exceeding parameter needs to be collected so long as the samples remain below the Target Level for that parameter for the remaining sampling events required under this agreement (unless more samples for that parameter are required by the applicable Industrial Stormwater Permit).

12.     **Mid-Season Interim BMPs Report**:  Within thirty (30) calendar days after Sunnyvale has obtained sampling results required by Paragraphs 10-11 from the first two (2) rain events during the 2013-2014 Wet Season, Sunnyvale shall prepare a Mid-Season Report, which shall contain:

> a.     **Summary chart:** For the first two rain events, and all monitoring thereafter, Sunnyvale shall record all outfall data for each parameter sampled at each outfall at the SMaRT Station and the Concrete Recycling Plant.  A summary chart shall be provided to Baykeeper that includes all of the sample results from the first two (2) rain events of the 2013-2014 Wet Season, and compares the sample results to the Target Levels identified in Exhibit 3;
>
> b.     **SMaRT Station:** If any of the sampling results from the first two rain events at the SMaRT Station exceed Target Levels for any parameter identified in Exhibit 3, Sunnyvale shall identify: (1) the likely source(s) of the pollutant(s), (2) new or improved interim non-structural and/or structural BMPs that will be implemented for the SMaRT Station during the 2013-2014 Wet Season to address the likely source, and (3) a schedule for implementation of the interim BMPs identified;
>
> c.     **Concrete Recycling Plant:** If any of the sampling results from the first two rain events at the Concrete Recycling Plant exceed the Target Levels for any parameter identified in Exhibit 3, Sunnyvale shall identify: (1) the likely source(s) of the pollutant(s), or Sunnyvale may choose to make a determination as to whether any exceedance is attributable predominantly[4] to the presence of that pollutant in the landfill cap solids or native soils by designing an appropriate sampling

---

[4] "Predominantly" is defined here to mean where the current constituent concentrations from solids collected at the Concrete Recycling Plant are elevated above background levels.  Background levels are defined herein as the landfill cap solids or native soils on the site, both unaffected by industrial operations.

plan and conducting source sampling of at least solids representative of
concrete and asphalt materials processed within the Concrete Recycling
Facility and the landfill cap solids unaffected by industrial operations
and/or native soils unaffected by industrial operations; (2) new or
improved interim non-structural  BMPs to be implemented at the
Concrete Recycling Plant during the remainder of the 2013-2014 Wet
Season; and (3) a schedule for implementation of the interim BMPs
identified.

    d.    In the event that Sunnyvale becomes subject to a new Industrial
Stormwater Permit, Sunnyvale may utilize the Target Levels (whether
called benchmarks or Numeric Action Levels) included in and as
prescribed and implemented by the new Permit instead of those
identified in Exhibit 3 for samples taken during the following wet
season.

13.    **Baykeeper Review of Mid-Season Report:**  Baykeeper shall have thirty
(30) calendar days from receipt to suggest revisions to the Mid-Season Report and, if applicable,
Sunnyvale's transition to the Target Levels contained in any new Industrial Stormwater Permit
applicable to Sunnyvale for the SMaRT Station and/or the Concrete Recycling Plant, and/or
Sunnyvale's sampling plan for source materials at the Concrete Recycling Facility.  If Sunnyvale
disagrees with any of Baykeeper's revisions, Sunnyvale shall have thirty (30) calendar days after
receipt of revisions to provide reasons for not accepting the revisions.  Either Settling Party may
invoke the Dispute Resolution provisions contained in Paragraph 44 if differences cannot be resolved.

14.    **Implementation of Mid-Season Report**: Sunnyvale shall implement new or
improved interim BMPs identified in the Mid-Season Report on the time schedule proposed by
Sunnyvale and agreed upon by the Parties.

15.    **End of Season Summary**:  By June 15, 2014, Sunnyvale shall prepare and
send to Baykeeper an End of Season Summary that includes: (1) a summary chart with all of the

sample results from the previous Wet Season, including the constituent concentration(s) from the Initial or Final Designated Discharge Point sample(s) and any additional samples required under this Settlement Agreement; (2) a determination whether any of the Wet Season's samples for each constituent exceeded the Target Levels in Exhibit 3 at either the SMaRT Station or the Concrete Recycling Facility; and (3) identification of any necessary new or improved BMPs that Sunnyvale has implemented or will implement that were not already discussed in a prior Mid-Season Report. If, as part of its Mid-Season Report, Sunnyvale undertook a determination of the likely pollutant sources for the Concrete Recycling Facility, then Sunnyvale shall provide Baykeeper with the results of that study, and, as applicable, if any exceedances of the applicable Target Levels in Exhibit 3 at the Concrete Recycling Facility's Initial Designated Discharge Points were not shown to be attributable predominantly to pollutants within the landfill cap solids or native soils, both unaffected by industrial operations, and rather were due to materials processed within the Concrete Recycling Facility, then Sunnyvale shall identify any necessary new or improved BMPs that it has implemented or will implement that were not already discussed in a prior Mid-Season Report.

**C.    Feasibility Study and Implementation Plan**

16.    **Feasibility Study:**

a.    If more than two (2) 2013-14 Wet Season sample results for the same constituent from the Initial Designated Discharge Points at the SMaRT Station exceeded the Target Levels present in Exhibit 3, then no later than December 15, 2014, Sunnyvale shall submit to Baykeeper a Feasibility Study that includes (1) the proposed designation of permanent representative discharge monitoring locations for all future industrial stormwater monitoring ("Final Designated Discharge Points"), and (2) a preliminary analysis and estimate of all necessary financial, construction, timing, and permitting considerations required to fully implement each BMP needed to address the exceeding constituent(s), including, but not limited to the following three structural BMPs:

i.      Roofing all or prioritized areas of the SMaRT Station to prevent exposure of materials to stormwater runoff,

ii.      Segregation, pretreatment, and/or diversion of stormwater runoff from the SMaRT Station to the City of Sunnyvale's Water Pollution Control Plant, and

iii.      Treatment of industrial stormwater prior to discharge to receiving waters or the City of Sunnyvale Water Pollution Control Plant.

b.      In addition, if more than two (2) of the wet season sample results from all Initial Designated Discharge Points at the Concrete Recycling Plant for the same constituent exceed the Target Levels present in Exhibit 3 and are not shown to be attributable predominantly to the presence of that pollutant in the landfill cap solids or native soils, both unaffected by industrial operations, as verified through testing of solids representative of concrete and asphalt materials processed within the Concrete Recycling Facility, Sunnyvale shall, in its Feasibility Study, propose and implement non-structural and/or structural BMPs to reduce pollution runoff for the exceeding constituent(s) from the Concrete Recycling Plant.

c.      If Sunnyvale determines that no additional BMPs are necessary because the requisite number of targets have not been exceeded, then Sunnyvale must provide a statement to that effect to Baykeeper in its Feasibility Study along with its proposed Final Designated Discharge Points, which constitute the discharge points most representative of the Facility.

d.      **Implementation Plan:** No later than May 15, 2015, Sunnyvale shall submit to Baykeeper a proposed timeframe and implementation plan based on the Feasibility Study for installing the selected necessary structural BMP(s).

e.      **Baykeeper Review of the Feasibility Study and Implementation Plan**: Baykeeper shall have twenty (20) calendar days from receipt to comment on the Feasibility Study and Implementation Plan.  Within twenty (20) business days of

notification by Baykeeper of any comments on the Feasibility Study, Sunnyvale shall respond to or incorporate all of Baykeeper's comments on the Study and begin drafting the Implementation Plan.  Within twenty (20) business days of notification by Baykeeper of any comments on the Implementation Plan, Sunnyvale shall respond to or incorporate all of Baykeeper's comments on the Plan and begin implementation accordingly.  If the Parties cannot agree on Baykeeper's conclusions for BMPs based on the Feasibility Study or comments on the Implementation Plan, then either Settling Party may invoke the Dispute Resolution provisions of Paragraph 44 if differences cannot be resolved.

**D**.  **Other Obligations**

17.    **Training**:  Beginning on the Effective Date, and annually thereafter through the term of this Settlement Agreement, and within thirty (30) calendar days of hiring of new Facility employees with operational duties that may affect stormwater, Sunnyvale shall conduct training appropriate to the particular employees to explain the requirements of the Facility's interim BMPs and existing and revised SWPPP(s) to the extent applicable to such employee.  Training shall focus on the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections.  Training shall be conducted in the language appropriate for the trainees (*i.e.,* Spanish or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, Sunnyvale shall integrate any new training requirements resulting from this Settlement Agreement into the Facility SWPPP.  Sunnyvale shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

18.    **Maintenance of BMP Structural Controls**:  Beginning on the Effective Date, Sunnyvale shall maintain structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

19.    **Amendment of SWPPP**:  While the Settlement Agreement is in effect, if Sunnyvale makes any substantive changes to BMPs or changes to the sampling locations, Sunnyvale shall update the SWPPP and/or Site Map within thirty (30) calendar days and submit the revised SWPPP to Baykeeper.  Baykeeper shall have thirty (30) calendar days from receipt of the amended SWPPP to propose any changes to the SWPPP and/or Site Map.  Within thirty (30) calendar days of notification by Baykeeper of any proposed changes to the SWPPP and/or Site Map, Sunnyvale shall make all of Baykeeper's changes to the amended SWPPP and/or Site Map unless Sunnyvale provides timely responses for any changes not made.  Either Settling Party may invoke the Dispute Resolution provisions of Paragraph 44 if differences cannot be resolved.  Compliance with the SWPPP, as amended in accordance with this paragraph and Paragraph 3, shall at all times be a requirement of this Settlement Agreement.

**E.    SAMPLING, MONITORING, INSPECTION & REPORTING**

20.    **Sampling Program - Stormwater**:  After the initial 2013-14 Wet Season characterization monitoring, and during the remaining term of this Settlement Agreement, subject to the limitations set forth below, Sunnyvale shall collect and analyze stormwater samples of discharges from all of its Final Designated Discharge Points beginning in the 2014-2015 Wet Season and continuing during the term of this Settlement Agreement, as well as other specified points at the Facility in accordance with the requirements of the Industrial Stormwater Permit and the terms of this Settlement Agreement.

a.    Should industrial processes materially change at the Facility, Sunnyvale shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. §131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes, as required by the terms of the Industrial Stormwater Permit.

b.    Sunnyvale shall notify Baykeeper of any monitoring or reporting program changes within thirty (30) calendar days.

21.     **Certified Lab**: Sunnyvale shall have all stormwater samples collected pursuant to this Settlement Agreement delivered to a California state certified environmental laboratory for analysis within the time needed for analysis under allowable laboratory method hold times. The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels set forth in the attached Exhibit 3.

22.     **Sample Results Submission**: After the Effective Date, Sunnyvale shall provide complete results from sampling and analysis to Baykeeper within ten (10) business days of receipt of the laboratory report from each sampling event.

23.     **Action Plan**: Beginning in the 2014-2015 Wet Season and continuing through the term of the Settlement Agreement, if two (2) or more of the stormwater sample results for the same constituent at the SMaRT Station exceed any Target Level set forth in Exhibit 3, or if two (2) or more of the stormwater sample results for the same constituent at the Concrete Recycling Plant exceed Target Levels set forth in Exhibit 3 and are not attributable predominantly to the landfill cap solids or native soils, both unaffected by industrial operations, and are due to the activities at the Concrete Recycling Facility, Sunnyvale shall submit an Action Plan to Baykeeper by July 15th, along with a copy of Sunnyvale's Annual Report. However, an Action Plan otherwise required by this paragraph is not required for the SMaRT Station if one of the structural BMPs set forth in Paragraph 16(a)(i-iii) of the Feasibility Study is being implemented.

24.     **Contents of Action Plan**: If an Action Plan is required under the terms of Paragraph 23, Sunnyvale shall do the following in an effort to achieve or maintain BAT and BCT at the Facility:

(1)     Identify the possible sources of the exceedance(s) of any Target Levels during the applicable Wet Season;

(2)     Evaluate and propose new or improved site-specific BMPs, which are designed to reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 3, achieve or maintain BAT and BCT, and maintain applicable water

quality standards in receiving waters for those constituents. Specifically, as applicable:

    a. **SMaRT Station**: Select new or improved structural BMP(s) designed in accordance with local requirements or non-structural BMP(s), potentially including the installation of BMPs that were considered in the Feasibility Study referenced in Paragraph 16(a)(i-iii), but not implemented;

    b. **Concrete Recycling Plant**: Select feasible new structural BMP(s) designed in accordance with local requirements, potentially including one of the following: alternate filtration media, installation of a more effective treatment system, or increased diversions to the sanitary sewer; and

(3) Propose a schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.

25. **Baykeeper Review of Action Plan**: Baykeeper shall have thirty (30) calendar days from receipt to propose revisions to the Action Plan. If Sunnyvale disagrees with any revisions, Sunnyvale shall have thirty (30) calendar days after receipt of revisions to respond. Either Settling Party may invoke Dispute Resolution provisions of Paragraph 44 if differences cannot be resolved.

26. **Implementation of Action Plan**: Sunnyvale shall implement the Action Plan(s) pursuant to Settlement Agreement on the time schedule proposed by Sunnyvale and agreed to by the Parties.

27. Within thirty (30) calendar days after BMPs set forth in an Action Plan pursuant to this Settlement Agreement are implemented, Sunnyvale shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP. Within thirty (30) calendar days thereafter, Sunnyvale shall provide Baykeeper with a copy of such revised SWPPP.

28.     During each Wet Season, Sunnyvale is under an ongoing obligation to evaluate the BMPs implemented at the Facility and discussed in current or previous Action Plans. If sample results for constituents exceed Target Levels during a Wet Season, Sunnyvale will continue to attempt to reduce the concentrations of that constituent(s) to Target Levels for the remainder of the Wet Season. Sunnyvale shall use the results from subsequent stormwater samples as they become available to assist with Sunnyvale's ongoing evaluation of the effectiveness of BMPs.

29.     **Stipulated Payments:** Sunnyvale shall pay the following stipulated payments during the Term of this Settlement Agreement.

a.     $500 for each failure to collect a sample required under this Settlement Agreement during the Wet Season beginning with the 2013-2014 Wet Season without adequate justification for such failure (e.g., no discharge, unsafe conditions,[5] etc.);

b.     $350 per day for every business day (Monday through Friday, excluding state and federal holidays) after the report due date for each failure to timely submit any document, report or other communication required in this Settlement Agreement; and

c.     $350 per day payment for every business day (Monday through Friday, excluding state and federal holidays) past the due date that Sunnyvale fails to submit any payments due under Paragraphs 29 and 36-38 of this Settlement Agreement.

d.     Any stipulated payments described above shall be paid by September 1st of each year this Consent Decree is in effect to the Rose Foundation for the Environment, 1970 Broadway Suite # 600, Oakland, CA 94612-2218, Attn: Tim Little, with a copy of payment sent concurrently to Baykeeper. Stipulated payment funds will be used by the Rose

---

[5] The term "unsafe conditions" would include non-daylight hours, electrical storms, tornados, hurricanes or wind events exceeding 60 miles per hour, severe flood events, or other conditions that would not comply with CAL-OSHA requirements.

Foundation to fund projects that benefit water quality in the San
Francisco Bay watershed.  In no case shall any of the funds be received
by Baykeeper.

    e.    Sunnyvale shall be permitted a five (5) day grace period for items (b)
through (d), above, before the $350 per day stipulated payment will be
applicable.

    30.    **Site Access**:  During the Term of this Settlement Agreement, Sunnyvale shall permit representatives of Baykeeper to perform two (2) physical inspections of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide Sunnyvale at least two business days' notice in advance of such Site Inspections, and Sunnyvale shall have the right to deny access if circumstances would make the Site Inspection unduly burdensome and pose significant interference with business operations.  In such case, Sunnyvale shall specify at least three (3) business days within the next two (2) weeks upon which a Site Inspection may proceed during normal business hours, and the Parties shall agree upon the inspection date.  Baykeeper shall comply with all safety instructions provided to Baykeeper by Sunnyvale staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, and to take photos and/or videos, a copy of which will be provided to Sunnyvale. Sunnyvale reserves the right to have a split of any sample taken or take duplicate samples.

    31.    **Reports**:  During the Term of this Settlement Agreement, Sunnyvale shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit, including the Annual Report.  Such documents and reports shall be transmitted to Baykeeper via electronic mail, if feasible, or by U.S. Mail when electronic transmission is not feasible, at the time the documents are due to be submitted to the Regional Board or State Board.

**II.**    **COMMITMENTS OF BAYKEEPER**

32.     **Notice of Settlement.**   Within five (5) business days of receiving all of the Parties' signatures to this Settlement Agreement, Baykeeper shall submit a Notice of Settlement and inform the Court of the expected case dismissal date.

33.     **Submission of Settlement Agreement to DOJ.**   Within three (3) business days of receiving all of the Parties' signatures to this Settlement Agreement, the Parties agree that Baykeeper will submit this Settlement Agreement to the U.S. Department of Justice ("DOJ") and EPA for agency review.  The agency review period will be considered to have expired forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

34.     **Effective Date**:  The Effective Date of this Settlement Agreement shall be the last day for the U.S. Department of Justice to provide comment on this Settlement Agreement, i.e., the 45th day following the U.S. Department of Justice's receipt of the Settlement Agreement.

35.     **Stipulated Dismissal.**  Within seven (7) calendar days of the Effective Date, Baykeeper shall file with the Court a Stipulation and Order, previously approved by the Parties, providing that the District Court shall retain jurisdiction as set forth in Paragraphs 39-40, and that the Complaint and all claims therein against Sunnyvale shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) as of the Court Approval Date.  Baykeeper shall separately dismiss its claims against the other defendants through a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(i).

## III.     MITIGATION, FEES, AND COSTS

36.     **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Effective Date, Sunnyvale shall pay the sum of thirty-five thousand dollars ($35,000) as follows:

a.     **Anti-litter campaign to improve water quality:** Within thirty (30) days of the effective date, Sunnyvale shall place seventeen thousand dollars ($17,000) into a separate anti-litter campaign fund targeted to improving water quality in San Francisco Bay by reducing

cigarette butts in the City of Sunnyvale's municipal stormwater discharges.  On or before July 15, 2014, Sunnyvale shall submit to Baykeeper a plan for the campaign that includes key water quality goals, tasks, and targets to be achieved by the campaign, the names and contact information for the primary City staff working on the campaign, and a detailed budget breakdown.  The mitigation payment required for the anti-litter campaign shall be spent in its entirety on implementation of the plan, rather than overhead costs, by July 1, 2015.  A brief final report with supporting documentation shall be due to Baykeeper on July 15, 2015 detailing how the funds were spent, measuring the outcome of the campaign as compared to the key water quality improvement goals identified, and containing a sworn statement by the responsible City personnel that all funds were spent in good-faith accordance with this agreement.

   b.  **The Rose Foundation:**  Within thirty (30) days of the Effective Date, with notice to Baykeeper, Sunnyvale shall submit eighteen thousand dollars ($18,000) to the Rose Foundation for the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed.  Payment shall be made to The Rose Foundation by mail to 1970 Broadway Suite # 600, Oakland, CA 94612-2218, Attn: Tim Little.  The Rose Foundation shall report the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the grant recipient and purpose of the grant funds. .

   37.  **Reimbursement of Fees and Costs**:  Sunnyvale shall reimburse Baykeeper in the amount of fifty-four thousand dollars ($54,000) to help defray Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Settlement Agreement, bringing these matters to Sunnyvale's attention, and negotiating a resolution of this action in the public interest. Sunnyvale shall tender said payment, payable to Baykeeper, within thirty (30) calendar days of the Effective Date.

   38.  **Compliance Monitoring Funds:**  Sunnyvale shall provide to Baykeeper two thousand dollars ($2,000) for the first year of this Settlement Agreement and four thousand dollars ($4,000) for each additional year of the Term of this Settlement Agreement, in the total amount of ten

thousand dollars ($10,000) for costs and fees associated with monitoring Sunnyvale's compliance with this Settlement Agreement. The first compliance monitoring fund payment of $2,000 shall be made payable to Baykeeper within thirty (30) calendar days after the Effective Date, and the remaining two (2) compliance monitoring fund payments, of $4,000 each, shall be made payable to Baykeeper within 12 months and 24 months from the Effective Date, respectively.

## IV. JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE SETTLEMENT AGREEMENT

39. **Retention of Jurisdiction.** For the purposes of hearing disputes over compliance with this Settlement Agreement only, the Parties stipulate that the United States District Court of California, Northern District of California, shall be able to retain jurisdiction over the Parties and subject matter of this Settlement Agreement, and that venue is appropriate in the Northern District of California. Sunnyvale agrees to not raise the issue of whether Baykeeper had standing under the Complaint as part of any disputes arising under this Settlement Agreement or in any action or motion undertaken pursuant to the Dispute Resolution procedures herein.

40. **Jurisdiction to Enforce Settlement Agreement.** This Court shall retain jurisdiction over this matter for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Settlement Agreement. The Court shall have the power to enforce the obligations of this Settlement Agreement with all available legal and equitable remedies.

## V. WAIVER, RELEASES AND COVENANTS NOT TO SUE

41. **Baykeeper Waiver and Release of Noticed Parties and Covenant Not to Sue**: Upon the Effective Date, Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns covenants not to sue the named Defendants, including Sunnyvale or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, consultants or other representatives with respect to any stormwater discharges from the Facility that arose before or may arise during the Term of this Settlement Agreement, excepting any disputes arising from enforcement of this Settlement Agreement. Baykeeper, on its own behalf and on behalf of its officers,

directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases all named Defendants, including Sunnyvale and its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for injunctive and equitable relief, damages, penalties, fines, sanctions, mitigation, and fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

42.    **Sunnyvale's Release of Baykeeper**:  Sunnyvale, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns releases Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint, excepting any disputes arising from enforcement of this Settlement Agreement.

43.    **Joint Release.**  The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and/or the Complaint, up to and including the Court Approval Date of this Agreement.

## VII.    MISCELLANEOUS PROVISIONS

44.    **Dispute Resolution**: If a dispute under this Settlement Agreement arises, or the Parties believe that a breach of this Settlement Agreement has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving a written request for a meeting from the

Settling Party alleging breach to determine whether a violation of this Settlement Agreement has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, then either Settling Party shall be entitled to pursue mediation or to bring a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Settlement Agreement.  The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Clean Water Act 33 U.S.C. §1365(d)), Federal Rules of Civil Procedure, and applicable case law interpreting such provisions.

45.    **Term of Settlement Agreement**:  This Settlement Agreement shall continue in effect until June 15, 2016 ("Termination Date"), at which time the Settlement Agreement, and all obligations under it, shall automatically terminate.  This Settlement Agreement and all of the City of Sunnyvale's obligations under it also shall automatically terminate  in the event that Sunnyvale: 1) halts all industrial activity at any portion of the Facility; 2) is no longer required to be covered under the Industrial Stormwater permit for that portion of the Facility; 3) Sunnyvale files a Notice of Termination ("NOT") with the Regional Board to terminate its coverage under the Industrial Stormwater Permit for the parts of the Facility covered by this Settlement Agreement and provides Baykeeper with a copy of this NOT at the same time it is sent to the Regional Board, as well as a copy of the Regional Board's approval of the NOT; and (4) the time for any challenge to the Regional Board's approval of the NOT has passed and the Regional Board's decision is final.  Notwithstanding the foregoing, in the case of early termination: (a) the remaining funds due under Paragraph 36-38 of this Agreement not yet paid shall become due and payable within five (5) days of providing Baykeeper with notice of early termination; and (b) if any portions of the Facility continue industrial operations, the Settlement Agreement shall remain in effect until the Termination Date for that portion of the Facility, including all of the requirements herein as applicable to any future operators/industrial stormwater permittees of the Facility.

46.     **Execution in Counterparts**:  The Settlement Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

47.     **Signatures**:  The Parties' signatures to this Settlement Agreement transmitted by facsimile or electronic mail transmission shall be deemed binding.

48.     **Construction**:  The language in all parts of this Settlement Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Settlement Agreement are for reference only and shall not affect the construction of this Settlement Agreement.

49.     **Authority to Sign**:  The undersigned are authorized to execute this Settlement Agreement on behalf of the respective Parties and have read, understood and agreed to all of the terms and conditions of this Settlement Agreement.

50.     **Integrated Settlement Agreement**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Settlement Agreement are contained herein and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Parties, whether oral or written, respecting the matters covered by this Settlement Agreement.

51.     **Severability**:  In the event that any of the provisions of this Settlement Agreement are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

52.     **Choice of Law**:  This Settlement Agreement shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

53.     **Full Settlement**:  This Settlement Agreement constitutes a full and final settlement of this matter.

54.     **Negotiated Agreement**:  The Parties have negotiated this Settlement Agreement, and agree that it shall not be construed against the Settling Party preparing it, but shall be

construed as if the Settling Parties jointly prepared this Settlement Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

55.     **Modification of the Agreement**: This Settlement Agreement, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

56.     **Assignment**:  Subject only to the express restrictions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the signatory Parties, and their successors and assigns.

57.     **Mailing of Documents to Baykeeper/Notices/Correspondence**:  Any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to Baykeeper pursuant to this Settlement Agreement shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

**Baykeeper:**

> Sejal Choksi-Chugh
> San Francisco Baykeeper
> 785 Market Street, Suite 850
> San Francisco, CA 94103
> E-mail: sejal@baykeeper.org

Unless requested otherwise by Sunnyvale, any notices or documents required or provided for by this Settlement Agreement or related thereto that are to be provided to Sunnyvale pursuant to this Settlement Agreement shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

**Sunnyvale:**

> Joan Borger
> City Attorney
> City of Sunnyvale
> 456 W. Olive Ave.
> Sunnyvale, CA 94086
> (408) 730-7464
> Email: jborger@sunnyvale.ca.gov

With a copy sent to:

Melissa Thorme
DOWNEY BRAND
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Tel:  (916) 520-5376
Fax.: (916) 520-5776
E-mail: mthorme@downeybrand.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

58.    **Impossibility of Performance**:  No Settling Party shall be considered to be in default in the performance of any of its obligations under this Settlement Agreement when performance becomes impossible, despite the timely good faith efforts of the Settling Party, due to circumstances beyond the Settling Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, flood, and restraint by court order or public authority. "Circumstances beyond the Settling Party's control" shall not include normal inclement weather, or increases or overruns in costs or expenses associated with the completion of any work or activity under this Settlement Agreement unless these rise to a level deemed to be an extraordinary and unexpected change in financial circumstances.  Any Settling Party seeking to rely upon this paragraph shall have the burden of establishing impossibility of performance, including any claims of an extraordinary and unexpected change in financial circumstances, that could not reasonably have been avoided, and which by exercise of due diligence has been unable to overcome.

59.    **Choice of Law:**  The laws of the United States shall govern this Settlement Agreement.

60.    If for any reason the District Court should decline to approve this Settlement Agreement in the form presented or decline to accept jurisdiction over disputes arising related to the Settlement Agreement, the Parties shall use their best efforts to work together to modify the Settlement Agreement within thirty (30) calendar days so that it is acceptable to the District Court.  If the Parties

1  are unable to modify this Settlement Agreement in a mutually acceptable manner that is also

2  acceptable to the District Court, the Parties may agree to proceed with this agreement as a private

3  Settlement Agreement. If such agreement is not reached to proceed with a private Settlement

4  Agreement, then this Settlement Agreement shall immediately be null and void as well as inadmissible

5  as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code

6  section 1152.

7

8  AGREED.

9

10  SAN FRANCISCO BAYKEEPER

11      Date: 10/9/13

12

13      _Jayni Foley Hein_ (signature)

14  Jayni Foley Hein

15      Managing Attorney, San Francisco Baykeeper

16  CITY OF SUNNYVALE

17      Date:

18      _____

19      Joan Borger

20       City Attorney, City of Sunnyvale

21

22

23

24

25

26

27

28

# EXHIBIT 1



# EXHIBIT 2



# EXHIBIT 3

# EXHIBIT 3

**Target Levels for Stormwater Sampling**

| # | Constituent | Target Levels | Source |
|---|---|---|---|
| 1 | Total Suspended Solids | 100 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 2 | Oil and Grease | 15 mg/L | *Multi-Sector General Permit 2000 benchmark* |
| 3 | Total Iron | 1.0 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 4 | Chemical Oxygen Demand | 120 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 5 | Total Aluminum | 0.75 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 6 | Total Copper* | 0.0156 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 7 | Total Lead* | 0.095 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| 8 | Total Zinc* | 0.13 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |

*These parameters are included in the 2008 Multi-Sector General Permit, but are hardness dependent. Hardness calculations are appropriate for discharges to freshwater (*see* Appendix J located at http://cfpub.epa.gov/npdes/stormwater/msgp.cfm ).

EPA benchmarks are set with assumed hardness values of 100 mg/L (CaCO3).

In any compliance determination, Sunnyvale shall have the burden to establish that the assumption set forth above related to hardness should not apply based on actual receiving water sample data, and to demonstrate with specific formulas and calculations that modified target levels are more applicable.

1   are unable to modify this Settlement Agreement in a mutually acceptable manner that is also

2   acceptable to the District Court, the Parties may agree to proceed with this agreement as a private

3   Settlement Agreement.  If such agreement is not reached to proceed with a private Settlement

4   Agreement, then this Settlement Agreement shall immediately be null and void as well as inadmissible

5   as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code

6   section 1152.

7

8   AGREED.

9

10  SAN FRANCISCO BAYKEEPER

11      Date: 10/9/13

12

13

14  Jayni Foley Hein

15      Managing Attorney, San Francisco Baykeeper

16  CITY OF SUNNYVALE

17      Date: 10/10/13

18

19  Joan Borger

        City Attorney, City of Sunnyvale

20

21

22

23

24

25

26

27

28